**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0210-20

TENNILLE BROOME,

     Plaintiff-Appellant,

v.

SHOPRITE OF MILLVILLE,
MILLVILLE SUPERMARKET,
INC. d/b/a SHOPRITE OF
MILLVILLE, PEPSI
BEVERAGES COMPANY, and
NORTH AMERICAN BEVERAGE
COMPANY,

     Defendants,

and

UNION LAKE SUPERMARKET,
LLC, d/b/a SHOPRITE OF
MILLVILLE,

     Defendant-Respondent.

_____

Argued November 8, 2021 – Decided July 18, 2022

Before Judges Vernoia and Firko.

On appeal from Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0468-18.

Melville D. Lide argued the cause for appellant (Radano and Lide, attorneys; Melville D. Lide, on the briefs).

Christopher J. Carlson argued the cause for respondent (Capehart & Scatchard, PA, attorneys; Christopher J. Carlson, of counsel and on the brief).

PER CURIAM

In this personal injury matter, plaintiff Tennille Broome alleges she suffered personal injuries when she slipped on water on the floor of a check-out aisle of defendant Union Lake Supermarket, LLC's grocery store. She claimed the water leaked onto the floor from a refrigerated soda display case (refrigerator) located adjacent to the checkout aisle.[1] Plaintiff appeals from August 7, 2016 orders barring in part opinion testimony from her liability expert, Colin Seybold, P.E., and granting summary judgment to defendant Union Lake Supermarket, LLC. Plaintiff also appeals from a September 11, 2020 order denying in part her motion for reconsideration. Having carefully reviewed the

---

[1] Throughout the record, the refrigerated soda display case is variously referred to as a glass door merchandiser, machine, unit, and cooler. For purposes of clarity, we refer to it as a refrigerator.

A-0210-20

record and the parties' arguments, we affirm in part, vacate in part, and remand for further proceedings.

I.

Plaintiff's complaint alleged two theories of liability against defendant. Plaintiff averred a premises liability claim, asserting she was a business invitee at defendant's supermarket, and she was injured by a dangerous condition—water on the floor of the checkout aisle—about which defendant had either actual or constructive notice. Plaintiff also asserted a negligent failure to maintain claim, averring defendant's failure to properly maintain the refrigerator caused it to leak water onto the floor of the checkout aisle.

We discern the following undisputed facts concerning those claims from the parties' Rule 4:46-2 statements and the record of the proceedings before the motion court. Plaintiff alleges she was involved in what she characterizes as a "slip[] but not fall" in defendant's supermarket. The incident is alleged to have occurred between 4:00 and 4:30 p.m. on Saturday, July 16, 2016. At that time, between 80 and 100 of defendant's employees were working at the supermarket, with slightly more than half of the employees located in the front of the store near the checkout aisles and registers.

A-0210-20

According to plaintiff, as she "walked around [her shopping] cart to begin placing items on the conveyor belt, [she] slipped on [a] puddle of liquid" that she claimed, "leaked from a [refrigerator] located near the check[]out register." Plaintiff asserts she fell backwards and, as she attempted to "catch" herself, she grabbed the cart and "wrench[ed]" her left shoulder and neck, thereby twisting her torso in an "awkward manner."

Plaintiff did not see any liquid on the floor before she slipped, but afterward she determined that she slipped on water, the amount of which she estimated was approximately equivalent to that found in a sixteen-ounce bottle. Plaintiff recalled there were two other customers ahead of her in the checkout aisle paying for their items when she slipped.

Plaintiff testified she did not know the source of the water. She knew only the water "was close enough to the back of" the refrigerator that was located "near" the checkout aisle. However, she admitted she did not know if the water actually came from the refrigerator.

Plaintiff admitted in response to defendant's Rule 4:46-2 statement of undisputed material facts that the refrigerator was owned and maintained by Grayhawk d/b/a Pepsi Beverages Company (Grayhawk). Plaintiff did not present any evidence the refrigerator was maintained by defendant.

4

At the time plaintiff allegedly slipped, defendant's employee Ronald Boorman (Boorman) was working the cash register in the checkout aisle where the alleged slip occurred. Boorman described a "little puddle of water" near the front of the aisle.

Richard McNamee (McNamee) was employed by defendant as a store manager, and he was present in the supermarket at the time of the incident. McNamee testified at his deposition that he did not perform an inspection to determine the source of the puddle. McNamee testified he did not see any water in the vicinity of the checkout aisle where plaintiff claimed she slipped. He also testified he did not recall ever seeing water near any of the refrigerators located at the ends of the checkout aisles, he was never told by anyone about water near the refrigerators, and no customers ever complained about water near the refrigerators.

McNamee further testified that manager Ed Naulty (Naulty) completed a report stating "he believed" the cause of the puddle "came from the" refrigerator. Naulty passed away during the pendency of the litigation and was not deposed. On the day of the incident, Naulty prepared a "Customer Incident Report" stating plaintiff said, "her leg hit cart bottom frame, then held off the fall by her armpit catching on the handle of cart, the water came from leaking [refrigerator]."

5

Naulty's report is the only evidence purporting to identify the source of the water on the floor.[2]

A different store manager employed by defendant, Thomas F. Regan III (Regan), was also present on the day of the incident. Regan testified the refrigerators located near the checkout aisles leaked infrequently, leaks are "not a common occurrence," and leaks occur "a couple times a year. Maybe." He testified he had no knowledge of any leaks from the refrigerator located at the checkout aisle where plaintiff allegedly slipped.

In discovery, Grayhawk produced its service records from November 1, 2015, through December 1, 2016. The only records concerning the refrigerator located at the checkout aisle in which plaintiff alleged she slipped are dated January 19, 2016, more than six months before the incident. They show the refrigerator had an issue with a lightbulb, which was replaced.

Plaintiff retained a liability expert, Seybold. In his January 8, 2020 report, Seybold states "[t]he objective of [his] assignment was to determine if the reported puddle of water on the floor at Millville Shoprite" came from "a sudden

_____

[2] We note the report does not state Naulty determined the water leaked from the refrigerator. The report appears to state only that plaintiff reported to Naulty the water leaked from the refrigerator and, as noted, plaintiff testified she did not actually know the source of the water.

6

water leak or from a slow water leak that occurred over a long period of time out of a" refrigerator. Seybold's report explained he performed an inspection of the refrigerator on October 21, 2019—more than three years after the date of plaintiff's accident. He observed that, at the time of his inspection, there was "a substantial amount of dirt and dust" in the refrigerator.

Seybold's report cites deposition testimony of a Grayhawk representative Bryan Clarkson (Clarkson) that the refrigerator "was not serviced or maintained by Grayhawk" during the six months prior to the date of plaintiff's alleged slip. This is consistent with the service records showing the only maintenance—the change of a lightbulb—performed on the refrigerator was on January 19, 2016. Seybold opined that "[t]hus, Grayhawk did not perform any routine maintenance on the subject [refrigerator] during and immediately after the loss period" and "[t]his indicates that [defendant] was responsible for all routine maintenance for the subject and that the subject [refrigerator] did not have a mechanical failure during the loss period."

Seybold's report also cites Regan's deposition testimony that "condensate" leaks out of the refrigerators and onto the floor. Regan testified the condensate leaks from refrigerators occur "[m]ost of the time" due to a "clogged drain," and "[s]ometimes . . . based on weather and/or if the door [to the refrigerator] is left

7

open." However, Seybold's report contains no mention of the weather conditions, including what the respective temperature and humidity were on the date of plaintiff's accident.

In his report, Seybold rejected Regan's testimony a "clogged drain" could have caused the leak, explaining the refrigerator "does not have a drain." He further explained the refrigerator has a drain pan near its condenser coil that collects condensation within the unit. Seybold reported "the heat from the condenser coil and the nearby compressor causes the condensate that collects in the unit's drain pan to evaporate before it overflows." Seybold further explained that because the refrigerator had a "dirty condenser coil, the refrigeration system will operate for longer periods because the rate of heat rejection via the condenser coil is reduced due to the dirt on the condenser coil." Seybold opined that those conditions produce "larger amounts of condensate" and "result in too much condensate draining into the drain pan and not enough condensate evaporating out of the drain pan." According to Seybold, it was those conditions, caused in the first instance by a dirty condenser coil, that caused water to leak from the refrigerator.

Seybold also opined that the refrigerator "has a moisture removal capacity of approximately 3.8 pounds of water per hour or 0.0076 gallons of water per

8

minute (GPM)," but he did not explain the basis for that opinion or cite to an accepted standard supporting it. Based on that finding, he stated, "the maximum continuous flow rate of water out of the [refrigerator] is 0.0076 GPM," and "it would take approximately 131.5 minutes (2.2 hours) for the [refrigerator] to leak one gallon of water onto the floor if the evaporation rate is assumed to be zero." He then opined that "the amount of time it would take . . . to leak one gallon of water on the floor would be over [eight] hours if the evaporation rate is reduced by only [twenty-five percent] due to the dirt and dust on the condenser coil," but he offered no basis for his calculation of the percentage reduction in the evaporation rate.

In sum, and based on those findings, Seybold opined that although the evidence he reviewed did not provide a specific amount of water on the floor of the checkout aisle, "[b]ased upon the maximum cooling capacity of the [refrigerator] and using a twenty-five percent reduction in the rate of evaporation for the condensate, one[-]eighth of a gallon of water ([sixteen] ounces) would take [one] hour to leak out . . . onto the floor and spread out from underneath the [refrigerator] and the surrounding display racks."

Seybold concluded:

> It is my professional opinion . . . the puddle of water on the floor . . . developed from a slow water leak that

A-0210-20

occurred over a long period of time out of the subject . . . [refrigerator].  No records were reviewed that indicated that this unit was periodically cleaned as recommended by the manufacturer.  This lack of regular maintenance was evident during my inspection when the unit was observed to be very dusty and dirty. The lack of maintenance on this unit resulted in the leak of water out of the condensate drain pan.

Following the completion of discovery, Grayhawk and defendant filed motions for summary judgment.[3]  After hearing argument, the court granted Grayhawk summary judgment, finding the motion record did not support plaintiff's claims Grayhawk negligently installed and maintained the refrigerator.  The court found plaintiff failed to present evidence Grayhawk had a duty to maintain the refrigerator.  The court also found that although the evidence supported a finding Grayhawk had a duty to properly install the refrigerator, plaintiff's expert's opinions were based on an inspection that occurred more than three years after plaintiff's alleged slip, Seybold offered no opinion that water leaked from the refrigerator as the result of negligent installation years earlier, and plaintiff failed to present any other evidence the leak was caused by any purported negligent installation.

---

[3]  On July 10, 2020, the court issued an oral opinion and order, granting Grayhawk's motion for summary judgment, which we do not address because plaintiff does not appeal from that order.

In addressing Grayhawk's motion, the court noted it did not need to determine if plaintiff presented evidence the water actually leaked from the refrigerator. The court explained that even if it assumed the water leaked from the refrigerator, plaintiff's negligent installation and maintenance claims against Grayhawk failed for the reasons noted.

The court then addressed defendant's summary judgment motion, explaining it believed that if Seybold's "opinion is admissible," there were genuine issues of material fact as to whether the water leaked from the display case. The court, however, noted defendant argued Seybold's report included inadmissible net opinions, and the court explained it "would have to grant" defendant summary judgment if Seybold's opinions were inadmissible. The court afforded counsel an opportunity to brief the issue of the admissibility of the opinions in Seybold's report because, as the court explained, its decision on defendant's summary judgment motion was dependent on the admissibility of Seybold's testimony.

Defendant subsequently moved to bar Seybold's expert testimony, and on August 7, 2020, the court heard argument on that motion and defendant's motion for summary judgment. In its decision, the court noted in plaintiff's opposition

11

she conceded certain opinions expressed in Seybold's report were inadmissible.[4] The court then found plaintiff sought to have Seybold offer opinions on only two subjects. The first subject was how the refrigerator "works," including "how it's designed, how it generates water in the cooling process," and how it produces condensate that is deposited in the drain pan. The court also found Seybold could testify on those subjects, as well as "his understanding of the refrigeration process." The court found an explanation about how the refrigerator "works would be helpful to the jury."

The second area about which the court determined Seybold could testify was "the general rate of evaporation for a cooler that is properly maintained." The court concluded Seybold could testify about "the rate of evaporation for a cooler in general," including "what the effect of insufficient maintenance is on a cooler in general."

---

[4] The record on appeal does not include plaintiff's brief in opposition to defendant's motion, see Rule 2:6-1(a)(2), and the court did not expressly identify those portions of Seybold's report plaintiff conceded constituted inadmissible statements or opinions. On appeal, plaintiff does not challenge the motion court's finding or dispute she conceded that portions of Seybold's report constituted inadmissible statements or opinions. It is unnecessary that we identify those portions of Seybold's report because, as we explain, the court noted plaintiff represented she intended to rely on Seybold's report and testimony only as to two issues. The court limited its discussion of the admissibility of Seybold's testimony to those issues, as do we.

A-0210-20

The court, however, determined Seybold could not testify about the rate of evaporation of the refrigerator plaintiff claimed leaked on the day she slipped in the checkout aisle. The court also barred Seybold from testifying, in accordance with his report, about the rate of evaporation and the amount of time it would take for the refrigerator to leak one gallon of water due to dust and dirt on the condenser coil because he could not "say how much dirt and dust existed on the condenser coil on the date" plaintiff slipped and "his inspection of the machine occurred three years after" the incident. For the same reason, the court determined Seybold could not testify in accordance with his report about the rate at which "the water spread across the floor" because that opinion was "based on the amount of dust and dirt on the machine" on the date of the incident.

The court explained "plaintiff . . . acknowledged" Seybold "cannot give the opinion that the water on the floor on the date in question came from the" refrigerator.[5] The court reasoned Seybold could not testify it is more likely than not that a lack of maintenance of the refrigerator "is the reason . . . the water

_____

[5] Plaintiff does not dispute the court correctly found she had acknowledged Seybold could not opine that the water on the floor that plaintiff claimed caused her to slip "came from the machine." As the court explained, Seybold could not properly offer such an opinion because, according to his report, it was founded on his inspection of the refrigerated display case that took place three years after the incident plaintiff claimed caused her injuries.

A-0210-20

leaked out of the bottom of the" refrigerator. The court also explained that allowing such testimony would result in Seybold opining indirectly that the water was from the refrigerator when, as noted, plaintiff conceded Seybold could not properly offer that opinion.

Thus, the court granted defendant's motion in part, barring Seybold from testifying about the rate of evaporation of the condensate in the refrigerator and opining the "water emanated from the [refrigerator] in question" as inadmissible net opinions. The court denied in part defendant's motion to bar Seybold's testimony, allowing Seybold to testify generally about how the refrigerator worked.

The court then addressed defendant's summary judgment motion, first finding plaintiff failed to sustain her burden on her premises liability claim because there was no evidence defendant had actual notice of the water on the floor. The court also determined there was no evidence defendant had constructive notice of the water prior to plaintiff's slip because even giving plaintiff the benefit of Naulty's statement the water emanated from the refrigerator, plaintiff lacked any "evidence upon which a jury could find that the water was there for a sufficient period of time to hold that . . . defendant had constructive notice of the condition."

14

The court also granted defendant summary judgment on plaintiff's remaining claim—that defendant's negligent maintenance of the refrigerator caused water to leak onto the floor. The court found there was sufficient evidence to support a finding defendant breached a duty by failing to ensure the refrigerator was properly maintained, but the court found plaintiff failed to present evidence the failure proximately caused the water to leak onto the floor. The court also stated, "there's just really no genuine issue of material fact that a jury could find that the water came from the [refrigerator], and that, therefore, the breach of a duty caused the plaintiff's injuries."

Thus, the court found the evidence supported plaintiff's claim defendant breached its duty to maintain the refrigerator. However, the court also determined the claim failed based "on a lack of evidence of causation."

The court also rejected plaintiff's request for a N.J.R.E. 104 hearing to address the bases for the opinions expressed in Seybold's report. The court found a N.J.R.E. 104 hearing might be required if it considered rejecting Seybold's opinion testimony based on his methodology. The court explained its decision to bar Seybold's opinion testimony was founded on its determination Seybold's opinion about "how long it would take [for] the amount of water to leak onto the floor" was based on calculations made "without knowing how

15

much dirt and dust was on the coils, on the machine on the date in question," and that inadequacy could not be remedied at a [N.J.R.E.] 104 hearing because there was no evidence there was dust or dirt on the coils on the day plaintiff alleged she slipped.

Defendant moved for reconsideration of the court's summary judgment order, arguing that in granting defendant's summary judgment motion the court failed to consider the evidence—based on plaintiff's testimony—there was approximately sixteen ounces of water on the floor. Plaintiff argued that evidence, coupled with Seybold's allowable testimony about how the refrigerator worked, supported her claim defendant had constructive notice of the water and defendant failed to maintain the refrigerator.

The court acknowledged it did not consider pertinent evidence—plaintiff's observation there was sixteen ounces of water on the floor—and it granted plaintiff's reconsideration motion on that basis. The court, however, determined that its consideration of the evidence did not require a reversal of its summary judgment award to defendant.

More particularly, the court reaffirmed its summary judgment award on plaintiff's failure to maintain claim. The court found plaintiff presented evidence establishing defendant's duty to maintain the refrigerator and that

16

Seybold's report showing no routine maintenance during the six months prior to the incident established a breach of the maintenance duty. The court also found that even assuming the evidence was sufficient to support plaintiff's claim the water leaked from the refrigerator,[6] plaintiff's failure to maintain claim failed because plaintiff conceded Seybold could not opine the alleged improper maintenance caused the water to overflow, and there was no evidence the alleged improper maintenance actually caused the water to leak from the refrigerator.

The court also addressed plaintiff's premises liability claim, explaining that it previously determined plaintiff could not establish defendant had constructive notice of the water on the floor because there was no evidence about the amount of water on the floor supporting an expert's opinion about how long it would have taken for the water to accumulate on the floor. The court noted plaintiff's motion for reconsideration established there was evidence—plaintiff's testimony—there was approximately sixteen ounces of water on the floor, but the court determined that evidence did not require the denial of defendant's summary judgment motion.

---

[6] The court found there was sufficient evidence establishing the water leaked from the refrigerator, including Naulty's statement in his report, the proximity of the water to the refrigerator, and Seybold's admissible opinion testimony that improper maintenance can cause water to drip from the refrigerator.

A-0210-20

The court reasoned even if the jury accepted plaintiff's testimony there was sixteen ounces of water on the floor and Seybold's opinion concerning the maximum amount of water flow from the refrigerator and general rates of evaporation, it would have taken—at most—16.43 minutes for the refrigerator to have leaked that amount of water. The court further noted Seybold opined the leakage would result in a "very slow, gradual accumulation" of the water, and that "no reasonable jury could find that 16.43 minutes . . . would be enough time for defendant to recognize that the spill was occurring and to do something about it."

The court further found plaintiff would attempt to argue at trial that the actual time it took to accumulate sixteen ounces of water was longer based on Seybold's opinion concerning the reduced evaporation rate, caused by dirt and dust, but that opinion was inadmissible because it was founded on an assumption the evaporation rate should be reduced by twenty-five percent and he offered no basis in evidence for that conclusion. The court determined plaintiff could not succeed on its constructive notice premises liability claim because "there [was] not enough information" allowing the jury to determine "how long the water was there."

18

The court entered an order granting in part plaintiff's motion for reconsideration and granting defendant summary judgment on plaintiff's two causes of action. This appeal followed.

II.

We conduct a de novo review of an order granting a summary judgment motion, Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016), and we apply the same standard as the trial court, State v. Perini Corp., 221 N.J. 412, 425 (2015). In considering a summary judgment motion, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009) (first citing R. 4:46-2(c); and then citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). Issues of law are subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015). We apply these principles to the court's grant of summary judgment to defendant on plaintiff's two causes of action.

19

A.

Plaintiff argues the court invaded the "province of the jury" by finding she failed to present sufficient evidence establishing defendant had constructive notice of the water on the floor of the checkout aisle. Plaintiff concedes the court properly used the non-barred portions of Seybold's report to "calculate that it would have taken at least 16.43 minutes for the puddle of water to accumulate," but she claims the court erroneously "jumped to a determination that, as a matter of law, this was an insufficient amount of time for the dangerous condition to be discovered" by defendant, and thus erred by granting summary judgment on the premises liability claim.

A cause of action for negligence "requires the establishment of four elements: (1) a duty of care; (2) a breach of that duty; (3) actual and proximate causation; and (4) damages." Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013). The plaintiff "bears the burden of establishing those elements by some competent proof[.]" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

"[A] proprietor's duty to his invitee is one of due care under all the circumstances." Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 257

(2015) (quoting Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964)). The duty of due care to a "business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)).

Thus, "an invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Prioleau 223 N.J. at 257 (quoting Nisivoccia, 175 N.J. at 563); see also Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (stating that "[t]he absence of [actual or constructive] notice is fatal to plaintiff's claims of premises liability," and that "[t]he mere existence of an alleged dangerous condition is not constructive notice of it") (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).

"Owners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover." Troupe, 443 N.J. Super. at 601-02. "A defendant has constructive

notice when the condition existed []for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." Id. at 602 (quoting Parmenter v. Jarvis Drug Store, 48 N.J. Super. 507, 510 (App. Div. 1957)). Constructive notice may be inferred from "the characteristics of the dangerous condition giving rise to the slip and fall" and from "eyewitness testimony." Troupe, 443 N.J. Super. at 602; see also, e.g., Grzanka v. Pfeifer, 301 N.J. Super. 563, 574 (App. Div. 1997) (finding constructive notice where eyewitness observed the light had been out for a while); Tua v. Modern Homes, Inc., 64 N.J. Super. 211, 220 (App. Div. 1960) (finding constructive notice where wax on a floor had hardened around its edges); Parmenter, 48 N.J. Super. at 511 (1957) (finding "dirtiness" of water that caused the plaintiff's fall "tended to be corroborative of the length of time it lay on the floor").

Plaintiff claims the court erred by finding the evidence insufficient to establish defendant had constructive notice of the water in the checkout aisle.[7] She concedes the court correctly interpreted Seybold's report and applied his analysis—concerning the rate of water flow caused by condensation from the

---

[7] Plaintiff does not claim defendant had actual notice of the water in the checkout aisle. In addition, the record is bereft of evidence establishing defendant had actual notice of the water.

22

refrigerator—to determine it would have taken 16.43 minutes for the alleged sixteen ounces of water to accumulate on the checkout aisle floor.

Plaintiff argues the court correctly recognized that "[t]he question of constructive notice is . . . fact-sensitive, [and] depends on the character and duration of the defect," but she claims the court invaded the province of the jury by determining that an accumulation of water over 16.43 minutes was of an insufficient duration to establish defendant had constructive notice as a matter of law. Plaintiff argues the 16.43 minutes, the competent evidence established it may have taken for the water to accumulate, is alone sufficient to support a finding of constructive notice and that other evidence—including the presence of many of defendant's employees near the checkout aisles—also supports a finding of constructive notice. Plaintiff contends the court erred by concluding otherwise.

Even giving, as we must, plaintiff the benefit of all reasonable inferences based on the evidence, see Brill, 142 N.J. at 540, the evidence allowing a determination it took "16.43 minutes or less to accumulate" sixteen ounces of water on the floor is insufficient to support a finding, or a reasonable inference, that sixteen ounces of water were on the floor in the checkout aisle for 16.43 minutes. Rather, according to Seybold's description of the general operation of

the refrigerator, the water would have leaked slowly from the refrigerator and the accumulated water would have totaled sixteen ounces only at the end of the 16.43 minutes. At the beginning of the period, the amount of leakage onto the floor would have been negligible and the water would have only slowly accumulated over 16.43 minutes until it totaled the approximately sixteen ounces plaintiff testified was present when she slipped.

Under those circumstances, we are not persuaded the court erred by finding no reasonable jury could conclude the water was present for a sufficient duration to establish defendant had constructive notice of it. See id. at 533 (explaining a court deciding a summary judgment motion must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law") (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). At worst, the water was present only for a matter of minutes, and plaintiff offers no evidence that its presence for that limited period would have reasonably resulted in defendant knowing about the water and correcting it through reasonable diligence.

Indeed, there is no evidence any other employees saw the water, nor is there evidence the two shoppers in front of plaintiff in the same checkout aisle

24

saw the water. And, plaintiff did not see the water, which she described as clear. Cf. Parmenter, 48 N.J. Super. at 511 (finding "dirtiness" of water that caused the plaintiff's fall "tended to be corroborative of the length of time it lay on the floor"). The mere "[e]xistence of an alleged dangerous condition is not constructive notice of it," Sims, 244 N.J. Super. at 42, and here the court correctly determined plaintiff failed to present sufficient evidence permitting a reasonable jury to find defendant had constructive notice of the water on the checkout aisle floor.

B.

Plaintiff argues the court erred by granting defendant summary judgment on her claim defendant negligently failed to maintain the refrigerator. Plaintiff contends that in its ruling on plaintiff's motion for reconsideration, the court acknowledged she presented sufficient evidence supporting the claim. We agree and reverse the court's entry of summary judgment on plaintiff's claim defendant negligently breached a duty to ensure the refrigerator was duly maintained.

In granting defendant's summary judgment on the claim, the court found defendant "had a duty to either maintain the [refrigerator] or make sure that it was maintained by whoever did have the duty" because the refrigerator "existed in the premises . . . where it might have affected invitee[s]." The court also

25

found sufficient evidence of a breach of the duty, citing Seybold's report, which noted the lack of required maintenance and explained the lack of maintenance might cause water to overflow from the drain pan. The court found plaintiff did not sustain her burden because there was a lack of evidence the water actually came from the refrigerator. And, it was on that basis, the court found plaintiff lacked sufficient evidence supporting her failure-to-maintain claim.

On the reconsideration motion, the court again found defendant had a duty to maintain the refrigerator, explaining defendant "had a duty to make sure that a [refrigerator] on its property was properly maintain[ed] so that it wouldn't cause any danger to its invitees." The court further found there was evidence defendant breached that duty, again noting Seybold's report stating the refrigerator's maintenance records showed it was not properly maintained as required by the refrigerator's manual.

The court also found there was sufficient evidence to permit the jury to conclude the water leaked from the refrigerator. That evidence included the proximity of the water to the refrigerator, Naulty's report the water leaked from the refrigerator, and Seybold's opinion that improper maintenance could cause water to leak from the refrigerator.

26

The court, however, found plaintiff lacked evidence the failure to maintain the refrigerator caused the water to leak onto the floor. The court determined Seybold's opinion that if water leaked from the refrigerator, it was more likely than not caused by improper maintenance—which the court found admissible—was insufficient to create a fact issue as to whether the leaked water was caused by improper maintenance. The court found expert opinion was required to establish the leak was caused by negligent maintenance and, despite acknowledging Seybold offered such an opinion, ruling Seybold could offer an opinion it was more likely than not improper maintenance which caused water to leak, and stating in its order Seybold could offer such an opinion, the court incongruously concluded "Seybold does not give that opinion." Based on those findings, the court concluded "plaintiff cannot prove her case."

The record offers no explanation for the court's determination Seybold could properly testify it is more likely than not the leak of water was caused by improper maintenance of the refrigerator. The court did not make any express findings of fact or conclusions of law supporting its determination the opinion is admissible. R. 1:7-4.

Seybold's report suggests the opinion—which the court acknowledged, ruled was admissible, and then disregarded—is based on the dust and dirt he

found in the refrigerator three years after plaintiff's alleged slip. The report also suggests other bases for the opinion, including Seybold's description of the operation of the refrigerator and its generation of water through condensation, the refrigerator's maintenance requirements and the lack of any records demonstrating proper maintenance, and the absence of any evidence the refrigerator otherwise suffered a malfunction that required repair.

Plaintiff does not challenge the court's determination that Seybold may not properly rely on the dust and dirt he found during his inspection to conclude a breach of the duty to maintain the refrigerator caused, or more likely than not caused, the water to leak from the refrigerator. See Grzanka, 301 N.J. Super. at 582-83 (explaining an expert who examines an object alleged to have caused an accident who has "no specific information as to" the condition of the object "at any time either before or after the incident," may not properly assume "the current conditions at all equated with those" at the time of the accident). Thus, for his opinion concerning the cause of the water leakage to be admissible, Seybold's methodology for arriving at his opinion must be based on grounds independent of the dust and dirt he found during his inspection.

What is unclear is Seybold's methodology for arriving at the opinion and the precise bases upon which the opinion rests. If Seybold's opinion as to

28

causation rests on his finding of dirt and dust at the time of his inspection, it is clearly inadmissible.  See ibid.

If, on the other hand, the opinion is properly founded on facts established by the evidence and a proper methodology, it is admissible and requires a reversal of the court's summary judgment award on plaintiff's negligent maintenance claim.  That is, if, as the court found, Seybold may properly testify it is more likely than not defendant's negligent maintenance of the refrigerator, or defendant's negligent failure to ensure the refrigerator was properly maintained, caused the leak of the water into the checkout aisle, then plaintiff has sufficient evidence establishing the proof of causation the motion court found lacking, and the motion court erred by granting defendant summary judgment on the claim.

Because Seybold's precise methodology is unclear from his report, the court did not make findings supporting its determination the contested opinion as to causation is admissible, and the "court's ruling on admissibility [will] be dispositive of the merits, the sounder practice is to afford the proponent of the expert's opinion an opportunity to prove its admissibility at a [N.J.R.E.] 104 hearing."  Kemp ex rel Wright v. State, 174 N.J. 412, 432-33 (2002).  We therefore vacate the summary judgment award on plaintiff's negligent

maintenance claim and remand for the court to address at a N.J.R.E. 104 hearing the admissibility of Seybold's opinion as to the cause of the leak. Following the hearing, the court shall make findings of fact and conclusions of law supporting its determination. R. 1:7-4.

If the court finds the opinion is admissible, it shall allow the claim to proceed to trial; Seybold's opinion testimony will satisfy plaintiff's burden of proving the failure to properly maintain the refrigerator caused the water leak. See generally Brill, 142 N.J. at 540 (explaining a court's review of the summary judgment record requires a determination of whether, "when viewed in the light most favorable to the non-moving party," the evidence is sufficient "to permit a rational factfinder to resolve the alleged disputed issue"). If it finds the opinion inadmissible, the court shall enter an order granting defendant summary judgment on the negligent maintenance claim because plaintiff will be unable to sustain her burden of establishing causation. We offer no opinion on the merits of the issue to be decided at the N.J.R.E. 104 hearing.

In sum, we affirm the August 7, 2016 order granting defendant summary judgment on plaintiff's premises liability claim; vacate the order granting defendant summary judgment on plaintiff's failure-to-maintain claim; vacate the order barring in part opinion testimony from her liability expert, Seybold; and

remand for further proceedings in accordance with this opinion. We also vacate that portion of the September 11, 2020 order allowing Seybold to offer opinion testimony that the cause of the water leak is more likely than not a failure to maintain the refrigerator, and we remand for further proceedings.

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

31