CATHERINE BURDGE, PLAINTIFF-APPELLANT, v. RETAIL DEPARTMENT STORES OF AMERICA, INC., AND SCHULTE UNITED, A BODY CORPORATE, DEFENDANTS-APPELLEES.

Submitted October 6, 1942—Decided December 2, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the plaintiff-appellant, *Parsons, Labrecque & Borden* (*Theodore J. Labrecque,* of counsel).

For the defendants-appellees, *Wilbur A. Stevens.*

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. This appeal is from a judgment of nonsuit in the Common Pleas Court of Monmouth County. The plaintiff, Catherine Burdge, while a customer in the defendant's store, slipped on the floor which had been oiled and, falling, suffered certain injuries. Her theory of the defendant's liability is that the dangerous condition which caused her mishap was created by the defendant's servants or agents and that that condition resulted from the negligent application of oil to the floor in the store premises.

Whether the court, on the facts in proof, was correct as a matter of law in granting the defendant's motion for a nonsuit is the question in this appeal. There is also a subsidiary question which is whether the court erred in excluding a question addressed to the witness, Helen Canzona, which was intended to bring out what was said about the

accident by one of the defendant's employees at the time of the happening.

At the end of the plaintiff's case the following facts were in evidence and consequently had to be regarded as true for the purposes of the motion: that the plaintiff, a customer, entered the defendant's store and walked towards the rear thereof; that she "went down the left middle aisle of the store" and reached a point that she described as the "middle of the second counter" when she slipped and fell; that upon examination of the floor it appeared to have been "freshly oiled   *   *   *;" that the whole floor had been freshly oiled "but there was far more [oil] in that one particular spot than the rest of the floor;" that the "spot" (*i. e.*, place of the accident) was about a foot long by three inches wide; "that the oil was thicker at that point than on the rest of the floor that had been oiled;" and specifically as to how much oil there was at the place where she fell, that "it was quite heavy there right at that particular spot." The foregoing is the pertinent part of the plaintiff's testimony on direct examination.

Interrogated on cross-examination as to why she stated that the floor had been "freshly" oiled, the witness said in substance she could tell by its appearance, by its odor and by her familiarity with floor oil which she used in her own home. Her testimony was supported by that of Miss Canzona, her shopping companion on the day in question. This witness said she was familiar with oily floors; that the floor in the defendant's store at the time when the accident occurred was damp and that "in certain places it was wetter than other places;   *   *   *   it appeared as though it had just been oiled;" that the floor on this day was "darker or wetter" than usual; that she had frequently been in the store before; that the floor smelled of the oil; that when she went to the assistance of Mrs. Burdge after the accident, the oil adhered to plaintiff's shoe and stocking; that there was more oil on the spot where plaintiff fell "than on the rest of the place."

The court, on granting motion for nonsuit, was persuaded that the case of *Coyne* v. *Mutual Grocery Store, Inc.,* 116 *N. J. L.* 36, was exactly in point and that the principles enunciated in *Bader* v. *Great Atlantic and Pacific Tea Co.,*

112 *Id.* 241; 169 *Atl. Rep.* 687; *Taylor* v. *Roth & Co.,* 102 *N. J. L.* 702, and *Abt* v. *Leeds & Lippincott Co.,* 109 *Id.* 311, were controlling. None of these authorities is apt. Each of them is obviously to be distinguished. In the first three cases cited, the negligence charged was the presence of foreign substance on the floor which caused the injury. But there was no evidence that the presence of the foreign substance had been brought to the defendant's attention or that it had been present for a length of time sufficient to charge the defendant with notice. Such state of fact is vastly different from the facts in proof in this case. And in the Leeds case, *supra,* the plaintiff slipped on a main hotel staircase, the testimony being that the wooden stairs were waxed, highly polished and very slippery. But, as the court said (at *p.* 312), there was no evidence tending to show * * * that the waxing or polishing was improper or had been done in an improper manner nor that the stairs had been left in any different condition than is usual in waxed and polished floors or stairs.

In this case the charge was that the oiling of the floor was improperly, that is, negligently done. From the testimony the jury could legitimately conclude that the entire floor had been "freshly" oiled; that the liquid was carelessly applied since there remained "wet" spots on one of which plaintiff slipped and fell; that on this spot the oil had been more copiously applied than on the rest of the floor in that area (compare *Berardo* v. *Ambrozy,* 128 *N. J. L.* 295; 25 *Atl. Rep.* (2d) 538). And this state of fact permits the inference that the application of the oil was uneven and in this posture it was for the jury to say whether there was negligence or not. The testimony for the plaintiff tending as it does to support the inference that the entire floor surface had been recently oiled, likewise tended to negative the idea that oil was put on the floor in this and other spots by some person unknown to and unauthorized by the defendant so to do.

The other point in the case is whether the court erred in refusing to permit testimony by Miss Canzona of a statement made by one of the salesgirls in the defendant's employ, as part of the *res gestæ,* immediately following the accident.

The words, whatever they would have been, might or might not be admissible as part of the *res gestæ*. Perhaps the statement to be attributed to the employee was within her competence and met the other norms of testimony of such character—perhaps not. Since we do not know just what the witness would have said we cannot very well pass on the question.

On the testimony before us we consider that a fact question was raised, that the nonsuit consequently was error, and that the judgment should be reversed. A *venire de novo* is allowed and costs will abide the event.