28 N.J. Super. 100 (1953)
100 A.2d 205
LOUISE OVERBY AND JOHN A. OVERBY, PLAINTIFFS-APPELLANTS,
v.
UNION LAUNDRY COMPANY, A BODY CORPORATE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided October 28, 1953.
*102 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Edmund J. Canzona argued the cause for appellants (Messrs. Parsons, Labrecque, Canzona & Combs, attorneys).
Mr. Thomas Francis Doyle argued the cause for respondent (Messrs. Townsend & Doyle, attorneys; Mr. Mark Townsend, of counsel; Mr. Frederick J. Fox, on the brief).
The opinion of the court was delivered by JAYNE, J.A.D.
The mishap in consequence of which this action was instituted occurred in the building of the Union Laundry Company at the corner of Patterson Avenue and Broad Street in the Borough of Shrewsbury on the early afternoon of July 26, 1952. The plaintiff, Louise Overby, sought to recover from the company compensatory damages for the bodily injuries she sustained in the mishap. Her husband, John A. Overby, sued per quod. The motion made at the conclusion of the plaintiffs' evidence for an involuntary *103 dismissal of the action was granted and a conformable judgment entered, from which the plaintiffs appeal.
The pretrial order reveals concisely the theme of the alleged cause of action:
"Plfs contend that the plf Louise on July 26, '52, entered the place of business of deft in Shrewsbury, N.J. as a customer and that she slipped on the slippery floor and injured herself. Plfs further allege the floor had been recently waxed and was done carelessly and negligently; the wax being soft and slippery. Plf claims personal injuries and expenses and the plf John as husband of the plf Louise files his derivative claim; plfs alleged that the plf Louise fell at a point about one step inside the front door."
The only testimony introduced at the trial to establish the allegation that the floor had been carelessly and negligently waxed came from Mrs. Overby. It is laconic and may be conveniently quoted:
"Q. Will you tell us the manner in which you entered the laundry and what happened? A. Well, I stepped into the laundry on my right foot and went to make a second step with my left foot, and my right toe slipped from under me and I went down on my right knee.
Q. What kind of shoes were you wearing? A. I had barefoot sandals on, no stockings.

* * * * * * * *
Q. In that type of shoe, is the toe covered or protected, or open? A. No, there is just a leather sole with one strap between my big toe  my first and second toe, and strap across my heel and over my instep.
Q. You put that foot down and it slipped, is that right? A. That's right.
Q. Did any part of your foot strike the saddle or sill of the entrance as you stepped in? A. No, it didn't.

* * * * * * * *
Q. Will you tell us what you observed? A. Well, where I had slipped I had made a skid mark on the floor, and there was a scraping left on the floor from where I had skidded, and I sat there and I looked around the edge and around the edge near the baseboard and spots on the floor near the counter, you could see where it was dull, a dull soft-looking finish, it wasn't polished completely like the middle of the floor. The middle of the floor was shiny, glassy-looking.
Q. You speak about a skid mark. Can you tell us specifically the length and width of that mark? A. Well, I would say it was *104 about an inch wide and about a foot, a foot and a little over in length.
Q. And when you went out, as you went by the place did you pass over the spot where you fell as you left the place? A. Yes, I did. I took my foot and rubbed it on the edge, and there was wax on my shoe, on the corner of my shoe.

* * * * * * * *
Q. You did it deliberately? A. Yes, I did. I wanted to see what was there, what caused me to fall. It was something there.
Q. That's right, it was something that caused you to fall? A. That's right, it was wax there.
Q. You are so right. A. It was wax.

* * * * * * * *
Q. It was while you were there in the ten or fifteen minutes in this pain that when you were leaving you went over and scraped your  put your shoe against the side to find out whether there was any wax there? A. I knew I slipped. I knew it was slippery there when I fell.
Q. Possibly you don't understand my question? A. I'm sorry, sir. I did, I walked there and on my way out the door I took my toe and scraped around on the side."
As a legal concept negligence is not an imaginative notion, a creature of mere surmise or conjecture; it denotes elements of factuality from which a lack of due care can be rationally deduced. It is not presumed that every injurious mishap that one encounters is necessarily attributable to the negligence of another. The factual pedestal stabilizing the logical inference of negligence must be established by some competent proof. Oelschlaeger v. Hahne & Co., 2 N.J. 490 (1949); Callahan v. National Lead Co., 4 N.J. 150 (1950); Hansen v. Eagle-Picher Lead Co., 8 N.J. 133 (1951).
And then it is to be recognized that negligence and reasonable care are relative terms. In the field of negligence we compare and contrast the conduct of the accused with that which the hypothetical person of reasonable vigilance, caution and prudence would have exercised in the same or similar factual conditions.
The author of this opinion expressed the conviction in Gentile v. Public Service Coordinated Transport, 12 N.J. Super. 45, 51 (App. Div. 1951), that the hypothetical example of human prudence should be regarded as our contemporary *105 and not our forefather. I ventured the assertion that what the reasonably prudent individual would do or refrain from doing in our modern environment of advantages and coincidental hazards cannot rationally be measured today in all instances by the probable behavior of our ancestors in the conditions of the age in which they lived.
Illustrative is the recollection that in entering the village stores of the distant past the barefoot customers were more likely to get splinters in their feet from the floor than to slip on any waxed surface. Thus over the years our concepts and associated mentations of ordinary care, caution, diligence, carelessness, delay, recklessness, assumption of risks, and so on, have been constructively metabolized.
The court is presumed to know what everybody else knows. Conscious of our daily observations of the present time, it would be fantastic for us to say that the person who causes the surface of the floor of his hotel lobby, store, or office to be made smooth, clean and attractive by the use of floor wax is ipso facto guilty of negligence and that the hypothetical person of the law would not have done so because the process tends to make the surface slippery. Our modern decisional law assumes no such senile posture. Vide, Abt v. Leeds & Lippincott Co., 109 N.J.L. 311 (E. & A. 1932); Blessing v. Goodman, 137 N.J.L. 395 (Sup. Ct. 1948).
Our former Court of Errors and Appeals invited attention, however, to the distinction between a floor that is perhaps "very slippery" and one that is "unusually slippery." Blessing v. Goodman, 133 N.J.L. 608 (E. & A. 1946).
And so it is resolved that proof of the mere circumstance that a person falls upon a floor that admittedly has been waxed does not warrant any inference that the mishap was caused by the proprietor's negligence. Abt v. Leeds & Lippincott Co., supra.
To generate an inference of negligence in such cases, it must be made to appear that either in the nature or quantity of the substance used, or in the manner or time of its application, there was such a departure from the normal or generally accepted standards as to create a hazard of a tortious character *106 for the lawful users of the premises. Bosze v. Metropolitan Life Insurance Co., 1 N.J. 5 (1948).
Obviously the testimony adduced in the present case does not relate to the quality or nature of the wax used or to the time of its application. Its evidential import, if any, of a culpable omission of duty by the defendant must therefore be taken to relate to the manner in which the wax had been applied, the quantity used, and its distribution. It follows that the appropriate inquiry is whether the meager testimony would originate in the minds of jurors a reasonable inference that in those respects (1) the wax had been applied to the floor in a manner so unconformable to the normal and generally accepted practices, (2) that a hazard of a tortious character was thereby created.
Manifestly the debated question attracts our attention more predominantly to the processes of rationalization than to the principles of law. Precedents are normally scarce in this field of judicial action because seldom in the family of analogous cases do you discover twins in the evidentiary qualities of their anatomies.
We recall the decisions in Kass v. Glatzel, 7 N.J. Misc. 1006 (Sup. Ct. 1929); McGee v. Kraft, 110 N.J.L. 532 (E. & A. 1933); Berardo v. Ambrozy, 128 N.J.L. 295 (Sup. Ct. 1942); Burdge v. Retail Department Stores of America, Inc., 129 N.J.L. 228 (Sup. Ct. 1942), affirmed 130 N.J.L. 81 (E. & A. 1943); Knapp v. Seton Inn, Inc., 5 N.J. Super. 226 (App. Div. 1949); Gill v. Krassner, 11 N.J. Super. 10 (App. Div. 1950).
In none of those cases was the evidence suggestive of the improper application of the substance to the floor so anemic as in the one under present review.
In the Kass case soap and water had been permitted to seep into the vestibule; in the McGee case there was a pool of oil; in the Berardo case there was a "big layer of wax on the step" so soft as to contain the imprint of a foot mark; in the Burdge case the floor had been "freshly oiled," "darker and wetter" than usual and thicker and heavier at the "spot"; in the Knapp case the room was intended to be used *107 as a bathroom, the floor was "unevenly waxed" and there were ridges or "indentations" in the "soft" wax.
Counsel for the plaintiff tells us that the decision in the Gill case which his firm had the good fortune successfully to prosecute fits the present case like a glove. We, too, notice the conspicuous resemblance of the testimony, but the plaintiff in the present case did not during the moments of her curiosity concerning the cause of her fall observe "soft wax plowed up on either side like you would scrape it with a putty knife or something," or "various spots" where the wax was very heavy or ridges on and indentations in the surface of the wax. Nor do we discover in the record before us any evidence that the defendant opened the floor to use prematurely before the wax had sufficiently solidified.
To use a waxed floor in a business establishment today is not an extraordinary habitude. The fact that the floor of the defendant's room had been waxed must have been obvious to the plaintiff at that time of the day. Everyone knows that one must walk over an efficiently waxed floor with more caution than over a rough one. The need of such precaution is as clear to the customer as it is to the proprietor.
We are not thinking at the moment of the doctrine of assumption of risk. We are alluding to that aspect of negligence which pertains to a defendant's lack of foresight for danger to others. The course of conduct of the reasonably prudent person is customarily based on an evaluation of the common knowledge, experience and awareness of others. The cautious proprietor of a modern department store no longer considers it a duty of requisite care to assign an attendant to every customer who chooses to use the escalator. The hazards of its use have become generally known.
We are not ignoring the fundamental duty of a person to exercise ordinary care to maintain his business premises in a reasonably suitable and safe condition for the contemplated use of his customers and that he must be reasonably circumspect and diligent in the observance of that legal obligation, but we are equally aware that he is not to be regarded in the law as an insurer peremptorily compelled to *108 compensate his patrons for any and every injury they may sustain while on his premises.
This case has only a very remote relation to an accident in which a plaintiff slipped on a string bean or other foreign substance that had been knowingly or carelessly permitted to remain on the floor. The presence of any such foreign substance on a floor dedicated to the use of invitees is not ordinarily to be anticipated and in that respect it may constitute an unobserved and unexpected hazard. Its harmful nature at such a location is reasonably foreseeable. Conversely, linoleum, tile, oiled and waxed floors are at present in the natural and common order of things. In the viewpoint of reasonable care or the lack thereof the law must recognize that human conduct and behavior is sensitized to the existing ways and customs of life.
Unless rationally governed, the modern social tendency to afford redress for every unfortunate injurious mishap regardless of fault or dereliction will soon squeeze the law of negligence out of existence.
It may be considered that in the present case the point is sharply debatable but we feel constrained to resolve that mere proof that the floor had been waxed, that the edges adjacent to the baseboard and counter appeared to have a dull finish more incompletely polished than the middle, that the customer carrying in front of her a bundle of soiled sheets and shirts slipped and fell on the floor elsewhere than along the baseboard or near the counter, that in slipping her shoe left a skid mark discernible on the surface of the floor beside which it was possible by means of the deliberate use of the side of the sole of a shoe to abrade some particles or quantity, perhaps infinitesimal, of wax, does not of itself create a logical and legitimate inference that the floor had been waxed in a manner so much at variance with the normal and generally accepted practices as negligently to imperil the safety of the customer. Where there are no disputed facts or disputed inferences to be drawn from the uncontroverted facts, it devolves upon the court to declare the judgment *109 which the law imposes. Kaufman v. Pennsylvania Railroad Co., 2 N.J. 318 (1949).
The judgment is affirmed.
FRANCIS, J.A.D. (dissenting).
The line of demarcation between the function of the court and the function of the jury is sometimes evanescent. In such cases where the one ends and the other begins may appear to be almost a sensory perception rather than a reasoned one. Faced with the need for establishment of a rule to be applied generally in determining when proven facts are sufficient to call into operation the function of the jury in negligence cases, the law declared that when the minds of reasonable men may differ as to the conclusion to be drawn from the facts, the problem must be submitted to the jury for determination.
The testimony on the subject of the defendant's negligence here is undoubtedly meager. However, because of a belief that inferences of lack of due care can be drawn from it by reasonable men, I feel obliged to vote to reverse the dismissal.
It is plain from the pretrial order that the floor in question had been waxed at defendant's instance some undisclosed time prior to appellant's mishap.
According to the evidence, appellant slipped and fell just after stepping into the laundry and while in the act of taking the second step. Observation of the place of the fall disclosed a foot-long, inch-wide skid or scrape mark on the floor. She noticed also that, although the center of the floor was "shiny, glassy-looking," around the counter and the edges it had a "dull soft-looking finish; it wasn't polished completely like the middle of the floor." On the way out of the place she rubbed her shoe on the edge of the skid or scrape and got wax on the corner of the shoe. After arriving home she wiped the wax off.
These facts, in my judgment, create a jury question as to whether or not the wax was properly applied or properly rubbed in or polished after application. Gill v. Krassner, 11 N.J. Super. 10 (App. Div. 1950). The probative force of the testimony was for the jury to determine.