**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1500-24

PETER KRASSNER,

    Plaintiff-Respondent,

v.

WALMART,

    Defendant-Appellant,

and

JASON CUZZO,

    Defendant.

_____

Argued January 29, 2026 – Decided March 13, 2026

Before Judges Marczyk, Bishop-Thompson, and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0839-18.

Matthew D. Vodzak argued the cause for appellant (Fowler Hirtzel McNulty & Spaulding, LLC, attorneys; Matthew D. Vodzak, of counsel and on the briefs).

Brett R. Greiner argued the cause for respondent (Levinson Axelrod, PA, attorneys; Brett R. Greiner, on the brief).

PER CURIAM

Defendant Walmart Stores East, L.P.[1] (Walmart) appeals from the trial court's January 7, 2025 judgment in favor of plaintiff Peter Krassner following a jury trial. The primary issues on appeal are whether the trial court: (1) erred in denying Walmart's motions for a directed verdict and a judgment notwithstanding the verdict (JNOV) based on plaintiff's purported failure to establish notice or constructive notice; and (2) erred by instructing the jury with Model Jury Charges (Civil), 5.20F(9), "Notice Not Required When Condition is Caused by Defendant" (rev. Nov. 2022). Following our review of the record and applicable legal principles, we affirm.

## I.

This matter stems from plaintiff sustaining a personal injury at a Walmart store when he backed into a fire extinguisher that fell off its mounting and landed on his foot, resulting in plaintiff developing complex regional pain syndrome. This is the second time this matter has come before us on appeal. In May 2022, this case was previously tried remotely over six days. Thereafter,

---

[1] Plaintiff incorrectly named Walmart Stores East, L.P., as Walmart.

A-1500-24

the jury returned a $1,754,135 verdict for plaintiff, finding Walmart to be seventy-four percent at fault and plaintiff to be twenty-six percent at fault. Accordingly, the court molded the jury's verdict to $1,317,299.90.

Walmart appealed from the trial court's August 10, 2022 order denying its motions for a new trial and a remittitur and denying reconsideration of its motion for a directed verdict. It also appealed from the court's September 1, 2022 order of judgment. This court affirmed in part, reversed in part, and remanded the matter for a new trial. Krassner v. Walmart, No. A-0065-22 (App. Div. Mar. 6, 2024) (slip op. at 1).

We found the first trial court erred in instructing the jury with Model Jury Charges (Civil), 5.20F(10), "Notice Not Required Under Certain Circumstances" (rev. Nov. 2022), "because it was, in substance, a mode-of-operation charge" that "had the clear capacity to impact the outcome of the verdict on liability." Id. at 11. We reasoned that charge was not applicable to the facts because it "ha[d] never been expanded beyond the self-service setting." Id. at 14 (quoting Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 262 (2015)).

We also affirmed the trial court's denial of Walmart's motion for reconsideration for a directed verdict and for a new trial on the issue of

constructive notice, stating "plaintiff presented sufficient evidence to raise a fact issue as to whether the fire extinguisher was a dangerous condition and whether Walmart had constructive notice." Id. at 20, 22. We explained:

> [An employee] acknowledged the fire extinguisher encroached into the side aisle where plaintiff encountered it. He further stated that it would not have been appropriate to move it to the side of the beam facing the main aisle because Walmart generally tries to keep those aisles as "free from obstructions as possible."
>
> Based on these facts, a jury could conclude this suggests that a hazardous condition could be created if the fire extinguisher, encroaching as it does into the walkway, were placed in any aisle, particularly a narrower side aisle. This, coupled with the testimony that plaintiff dislodged the extinguisher by "lightly brush[ing]" against it, when Walmart's employees indicated that it should not have fallen under such circumstances, is sufficient evidence to raise a fact issue for the jury as to whether this was a dangerous condition.
>
> We are further satisfied that when viewing the facts here in a light most favorable to plaintiff along with all reasonable inferences, there was sufficient evidence presented to raise a fact issue as to whether Walmart had constructive notice of the condition. Walmart acknowledged that upon inspection following the incident, the fire extinguisher's metal harness was warped and therefore was not in the typical round configuration so that it could sit flush against the cylinder of the extinguisher. [Another employee] also testified the latch on the mount for the extinguisher easily disengaged. Plaintiff acknowledged there was no

4

direct evidence of the condition of the harness before the accident, but we agree the circumstantial evidence raises a reasonable inference that the apparatus securing the extinguisher to the beam was damaged before the accident and could have been discovered by a reasonable inspection. Moreover, although Walmart argued there were no prior similar incidents involving a fire extinguisher being knocked off a beam, the evidence also showed Walmart kept back-up brackets in the store.

[Id. at 20-22 (emphasis added).]

Additionally, we affirmed the jury's verdict on damages and remanded for a new trial on liability only.

At the second trial, plaintiff testified that on February 23, 2018, he was shopping at a Walmart in Hamilton. He entered the personal care aisle, where a roof support column was located at the aisle's junction with a larger, sixteen-foot-wide main aisle—"Action Alley." The personal care aisle was considerably narrower. A fire extinguisher was mounted on the side of the column facing the personal care aisle, protruding into and partially obstructing a portion of the aisle. It was mounted with a single strap around the fire extinguisher and was held in place by a clasp. The decision to place the fire extinguisher in that location was made by Walmart's corporate office and the store's planning department, likely with the involvement of the local fire department.

A-1500-24

While in the personal care aisle, plaintiff began backing up with his shopping cart to allow another customer to pass him. As plaintiff backed up, he came into contact with the mounted fire extinguisher, which fell from its harness onto his left foot.[2] He had not seen the fire extinguisher prior to bumping into it and was not looking behind him.

Walmart's surveillance system captured the incident. Its customer service manager at the time, David Ferguson,[3] testified he did not observe plaintiff do anything wrong based on his review of the surveillance footage and plaintiff's actions were "very natural." Walmart's store manager, Jason Cuzzo, similarly testified he "wouldn't consider any of [plaintiff's] activities viewed in the video inappropriate."

After the incident, plaintiff moved the fire extinguisher from the middle of the personal care aisle to the floor next to the beam and filed an incident report with Walmart. Ferguson completed his own report and later examined the extinguisher. He testified he closed the latch to the fire extinguisher

---

[2] Plaintiff testified he "brushed" against the fire extinguisher. Walmart, however, contends the testimony from its witnesses and the surveillance footage of the incident showed plaintiff leaning to his left against the fire extinguisher prior to it falling.

[3] Ferguson was no longer a Walmart employee at the time of the retrial.

A-1500-24

following his examination of it and left it in place without making any repairs to its harness. Ferguson tried to recreate plaintiff's description of the incident by putting the fire extinguisher back in its mounting strap. He found the harness for the fire extinguisher was "exceedingly easy to undo" based on his observations following the incident, explaining "the latch immediately disengaged" upon the side of the harness being bumped. Ferguson also noted the "bend of the [mounting] strap[] w[as] warped" and not "sitting flush against the cylinder" of the extinguisher. However, he did not know what caused the warped condition or how long the straps had been warped. Ferguson was not responsible for inspecting fire extinguishers nor trained to do so.

Cuzzo explained the fire extinguisher's placement was intended to keep Action Alley free from obstructions because it was a high-traffic area. However, neither he nor the store's asset protection manager, Barbara Laytham, could explain why the fire extinguisher was placed on the side of the column facing the personal care aisle rather than another side, where it would not have obstructed any aisles. Cuzzo could not recall whether any other fire extinguishers were similarly mounted on the side of a pole that encroached into an aisle. Laytham testified not all mounts used for its fire extinguishers were the same, explaining some fire extinguishers were mounted on hooks and must

7

be "lift[ed] up" to be removed. Ferguson acknowledged customers walking through the store "bump[ed]" into beams, aisles, and merchandise "on a fairly regular basis." It was noted there was diamond plating at the bottom of the column holding the fire extinguisher, which plaintiff's counsel argued in his summation indicated Walmart believed "people [we]re going to hit that column with their carts."

Walmart presented an exemplar of the fire extinguisher and its mounting strap at trial to demonstrate how the clasp holding the extinguisher in place worked. Upon ruling on Walmart's application for a directed verdict, the trial court noted the clasp "was quite easily opened" based on its viewing of the demonstration. The jury was able to inspect the exemplar fire extinguisher and strap during deliberations.

Laytham further testified Walmart employees conducted monthly inspections of its fire extinguishers and documented the inspections on a checklist. She also explained employees were supposed to check for hazards in the store on a daily basis, however, those inspections were not documented. Laytham stated a notation would not be made on the checklist if an employee observed an unbuckled strap on the fire extinguisher and, rather, they would just close the strap. She asserted she was not aware of any repairs being made to the

8

fire extinguisher following the incident and Ferguson's inspection but prior to her own. Laytham also explained the fire extinguisher had been inspected a few days after the incident, and the straps had not been documented as warped. However, she noted documentation would only be made on the monthly checklist if the condition was observed that day, and no documentation would be made if the fire extinguisher fell from its mount without injuring anyone. Laytham also noted Walmart kept extra mounting straps. Cuzzo testified replacement mounting brackets were kept in the asset protection manager's office, explaining extra safety equipment was maintained because of "wear and tear" resulting from the extensive activities occurring in the store.

During the charge conference, plaintiff requested the court instruct the jury with Model Jury Charges (Civil), 5.20F(9). Walmart objected, arguing the dangerous condition was limited to the condition of the harness attaching the fire extinguisher to the column, not the fire extinguisher's placement, and plaintiff had offered no evidence Walmart had damaged that harness. It asserted plaintiff needed to prove it "had notice that there was a damaged bracket."

The court determined Model Jury Charges (Civil), 5.20F(9) should be given to the jury based on the record. It noted plaintiff's argument regarding the dangerous condition was "two-fold," as plaintiff contended, "not only the strap

A-1500-24

. . . [but] also the placement of the fire extinguisher . . . caused or created the hazardous condition." The court explained, "[p]laintiff backed into [the extinguisher] and apparently . . . came in contact with the strap which easily opens." Alternatively, it also explained: "Or if [the strap] had been previously opened, [plaintiff] touched it so that it released itself from the . . . bracket that was holding the fire extinguisher [in place]." The court specified, "the first part" of plaintiff's argument was that "the strap [wa]s easily opened with the slightest touch," and "[t]he second part . . . [wa]s the placement of th[e] fire extinguisher . . . in th[e personal care] aisle, rather than in the main aisle [(Action Alley)], or on the other side of the pole [(in the personal care aisle)]." The court further explained:

> [I]f [the jury] . . . find[s] . . . there was a hazardous condition existing before . . . [p]laintiff walked down that aisle, by the [fire extinguisher's] placement, and that his backing up and brushing it slightly caused . . . the reaction falling on his foot, well the jury can find . . . the charge indicates that there's no need for notice of this condition since [Walmart] created it by placing the fire extinguisher there.
>
> And it doesn't take an expert to put that in front of the jury. That's already in front of the jury without an expert.
>
> Yes, they placed it [t]here; yes, it's easily opened. Yes, they knew it would obstruct that aisle.

10

A-1500-24

The court noted Walmart "carefully" chose where to place the fire extinguisher as it "wanted to avoid the obstruction of the main aisle, so they put it in a side aisle," and "[i]nstead of putting it on the other side of that post, [Walmart] put [the extinguisher] on th[e] side of the post where it's in the [narrower] aisle." It explained Walmart made that decision despite "know[ing] people come in contact with things in the store all the time." The court also stated it was not required to confine itself to the issue of whether the clasp was a dangerous condition.

Accordingly, the court instructed the jury using Model Jury Charges (Civil), 5.20F(9). It also instructed the jury with Model Jury Charges (Civil), 5.20F(8), "Notice of Particular Danger as Condition of Liability" (rev. Nov. 2022). In pertinent part, it instructed the jury:

> If you find that the premise was not in reasonably safe condition, then in order to recover, . . . [p]laintiff must show either actual notice for a period of time before [p]laintiff's injury to permit the owner, in the exercise of reasonable care, to have corrected that condition; or constructive notice.
>
> When the term actual notice is used, we know that the owner or the owner's employees actually knew about the unsafe condition.
>
> When we talk about constructive notice, we mean that the particular condition existed for such a period of time that an owner of the premise, in the exercise of

11

reasonable care, should have discovered its existence. That is to say constructive notice means that the person having a duty of care to another is deemed to have notice of such unsafe condition which exists for such a period of time that a person of reasonable diligence would have discovered the dangerous condition.

If you find that the premise was not in a reasonably safe condition, and that the owner, or occupier, or agent, or servant, or employee of the owner or occupier created the condition through their own acts or omissions, then in order for [p]laintiff to recover, it's not necessary that you find that the owner/occupier had either actual or constructive notice of that particular unsafe condition.

However, the court denied plaintiff's request for the jury to be instructed with Model Jury Charges (Civil), 5.10D, "Res Ipsa Loquitur" (approved Oct. 1990). It reasoned plaintiff's own voluntary act or negligence contributed to the fire extinguisher falling, which foreclosed him from arguing a res ipsa loquitur theory of negligence.

At the close of evidence, both parties moved for a directed verdict. The trial court denied both motions, reasoning there was "sufficient evidence for the jury to draw conclusions with regard to the negligence of both parties."

Following deliberations, the jury returned a verdict in favor of plaintiff, finding Walmart to be eighty percent at fault and plaintiff to be twenty percent at fault. Both parties moved for a JNOV, which the trial court denied.

12

Accordingly, on January 7, 2025, the court entered a judgment in favor of plaintiff in the amount of $1,740,610.34, representing the previously affirmed damages award apportioned per the new jury verdict, plus stipulated past medical expenses and pre-judgment interest. This appeal ensued.

## II.

Walmart argues the trial court erred by failing "to grant judgment" in its favor because plaintiff neither proved Walmart had notice of a dangerous condition nor presented any evidence Walmart created a dangerous condition. It further contends the court erred by instructing the jury Walmart could be liable for creating a dangerous condition because Model Charge 5.20F(9) improperly absolved plaintiff from proving notice, "just as in the first trial."

## A.

Walmart principally argues the trial court erred in denying its motion for a directed verdict and its subsequent motion for JNOV because plaintiff neither proved it had notice of, nor created, a dangerous condition associated with the fire extinguisher at issue.

Acknowledging a business can be liable without notice if it negligently created a dangerous condition, Walmart contends plaintiff failed to prove it created a dangerous condition by placing the fire extinguisher "where patrons

13

might bump into it."  Rather, it asserts the relevant issue is the condition of the mounting straps that secured the fire extinguisher to the beam.  Walmart posits that even if the extinguisher's placement caused plaintiff to bump into it, plaintiff was not injured "merely" because he made contact with the extinguisher but because such contact caused the extinguisher to fall out of its mount and onto his foot.

Walmart distinguishes the facts of this case from others in which landowners were held liable for directly creating dangerous conditions, asserting there is no evidence establishing its conduct created the alleged dangerous condition of the extinguisher's mounting straps.  It claims plaintiff's theory of the case improperly bypasses the notice requirement, because, under his theory, a business could be held liable for a spill simply by virtue of having constructed the store or laid the flooring, which it avers is why this court vacated the first judgment.  Walmart asserts the "only evidence" regarding the condition of the mounting straps that supports plaintiff's claim came from Ferguson's post-incident observations, which it argues is insufficient to establish the straps were warped or loose prior to the accident or that it had notice of, or created, such a dangerous condition.  It reasons plaintiff's reliance on Ferguson's "lay opinion" requires "impermissible speculation."

14

Next, Walmart also reprises its argument plaintiff failed to prove it had actual or constructive notice the fire extinguisher was a dangerous condition such that it was likely to fall upon contact. It asserts plaintiff produced no evidence showing Walmart "actually knew" the fire extinguisher would fall if "bumped." It also claims plaintiff failed to prove constructive notice because he not only offered no evidence showing how long the extinguisher had allegedly been dangerous but also provided no evidence, "beyond [the] speculation or conjecture" of Ferguson's post-accident observations, establishing the extinguisher's mounting bracket was ever dangerous or warped. Walmart theorizes plaintiff's own negligence in backing into the extinguisher could have caused the damage to the mounting bracket.

Walmart notes the trial court barred plaintiff from arguing Walmart should have used a different design to secure the fire extinguisher to its mount because plaintiff lacked an expert establishing an alternative mounting system was available at the time of the accident and ruled any evidence of a design change post-incident was inadmissible as a subsequent remedial measure under N.J.R.E. 407. It also claims the fact it kept spare mounting brackets "proves nothing" and asserts evidence of its numerous inspections only demonstrates its efforts to ensure the safety of its patrons, not—contrary to plaintiff's assertion during

15

closing argument—that it was on notice of a dangerous condition. Thus, Walmart maintains the jury had no basis to find it was negligent because it was never presented with any evidence proving Walmart knew, or should have known, the fire extinguisher was likely to fall if contacted.

The challenges Walmart raised before the trial court were contained in its motions for a directed verdict under Rule 4:37-2(b) and for JNOV pursuant to Rule 4:40-2(b). Rule 4:37-2(b) allows a defendant to move for dismissal of an action or claim after the plaintiff rests and provides such a motion "shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in [the] plaintiff's favor." The standards under Rule 4:37-2(b) and Rule 4:40-2(b) for JNOV are identical. Verdicchio v. Ricca, 179 N.J. 1, 30 (2004).

Motions under Rule 4:37-2(b) and Rule 4:40-2(b) require the court to deny the motions if reasonable minds could differ after "accepting as true all the evidence which supports the position of the party defending against the motion and according [that party] the benefit of all inferences which can reasonably and legitimately be deduced therefrom . . . ." Smith v. Millville Rescue Squad, 225 N.J. 373, 397 (2016) (quoting Verdicchio, 179 N.J. at 30). The court should only grant the motions where no rational juror could find the plaintiff made a

16

prima facie case of the cause of action.  Ibid.  We review de novo a trial court's decision on these motions, applying the same standard as the trial court.  Ibid.

A cause of action for negligence "requires the establishment of four elements:  (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages."  Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594 (2013).  The plaintiff "bears the burden of establishing those elements[] 'by some competent proof' . . . ."  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (citation omitted) (quoting Overby v. Union Laundry Co., 28 N.J. Super. 100, 104 (App. Div. 1953)).

"[A] proprietor's duty to his invitee is one of due care under all the circumstances."  Prioleau, 223 N.J. at 257 (quoting Bozza v. Vornado, Inc., 42 N.J. 355, 359 (1964)).  "The duty of due care to a business invitee includes an affirmative duty to inspect the premises and 'requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe.'"  Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 601 (App. Div. 2016) (quoting Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003)).

17

Thus, "an invitee seeking to hold a business proprietor liable in negligence 'must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident.'" Prioleau, 223 N.J. at 257 (quoting Nisivoccia, 175 N.J. at 563). "A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe, 443 N.J. Super. at 602 (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)). Constructive notice may be inferred from "[t]he characteristics of the dangerous condition." Ibid.

We determine the trial court did not err in finding plaintiff presented sufficient evidence to establish an issue of fact as to whether the condition and placement of the fire extinguisher was a dangerous condition and whether Walmart had constructive notice. As in the first trial, Cuzzo acknowledged the support beam to which the fire extinguisher was attached encroached into the personal care aisle where plaintiff was injured and was not placed on the side of the beam facing Action Alley so as to keep that aisle free from obstructions. See Krassner, slip op. at 20-21. As we previously determined, "these facts" are sufficient for a jury to conclude "a hazardous condition could be created if the

18

fire extinguisher, encroaching as it d[id] into the walkway, were placed in any aisle, particularly a narrower side aisle." See id. at 21. These facts, coupled with plaintiff's testimony he dislodged the fire extinguisher merely by "brush[ing]" against it and Ferguson's testimony regarding the "exceedingly easy" manner in which the extinguisher could be disengaged, are sufficient evidence to raise a fact issue for the jury as to whether plaintiff encountered a dangerous condition.

Moreover, viewing the facts here in a light most favorable to plaintiff, as we must do for the purposes of these motions, along with all reasonable inferences in plaintiff's favor, we conclude there was sufficient evidence presented to raise a fact issue as to whether Walmart had constructive notice of the condition. Ferguson testified he observed the extinguisher's mounting straps to be "warped" and not "sitting flush against the cylinder" of the extinguisher following the incident. He also testified the harness for the fire extinguisher was "exceedingly easy to undo." Additionally, the testimony at trial revealed Walmart recognized customers bumped into beams on a "fairly regular basis," and plaintiff argued diamond plating was installed on the column at issue to protect against such incidents.

A-1500-24

The evidence presented at trial was also sufficient to raise a reasonable inference that the condition of the harness attaching the fire extinguisher to the column was damaged prior to plaintiff bumping into it and could have been discovered through a reasonable inspection given how easily it dislodged upon inspection after the accident. See id. at 22. Additionally, although Ferguson testified he knew of no prior problems involving fire extinguishers at that Walmart location, the evidence presented at the retrial, as in the first trial, showed Walmart maintained replacement mounting brackets in its asset protection manager's office because of "wear and tear" issues. See ibid.

Thus, viewing the evidence in a light most favorable to plaintiff and all inferences therefrom, a rational jury could conclude the fire extinguisher was not safely mounted on the column that encroached into the aisle thereby allowing it to be easily dislodged when plaintiff came into contact with it. Walmart has not demonstrated the evidence was so one-sided that it was entitled to a judgment as a matter of law. Accordingly, we conclude the trial court did not err in denying Walmart's motions for a directed verdict and JNOV.

B.

Walmart argues the trial court erred by instructing the jury with Model Jury Charges (Civil), 5.20F(9), thus allowing the jury to find it liable without

20

plaintiff proving Walmart had actual or constructive notice of a dangerous condition as the improper mode-of-operation charge provided in the first trial, which it avers contradicts this court's instruction in the first appeal that plaintiff must prove constructive notice. It suggests the court's use of Model Jury Charges (Civil), 5.20F(9) essentially functioned as the res ipsa loquitur charge, which plaintiff requested and the trial court rejected.

Walmart notes we previously concluded, in the first appeal, the use of both Model Jury Charges (Civil), 5.20F(8) and 5.20F(10) was improper, and it asserts instructing the jury with both Model Jury Charges (Civil), 5.20F(8)— which requires notice—and Model Jury Charges (Civil), 5.20F(9)—which does not require notice, so long as the defendant created a dangerous condition—was similarly contradictory and confusing for the jury. It contends Model Jury Charges (Civil), 5.20F(9) is more prejudicial than Model Jury Charges (Civil), 5.20F(10) because it does not require a hazardous condition created by a defendant's employees to be linked to the defendant business's particular manner of operation. Walmart also avers a note to Model Jury Charges (Civil), 5.20F(8)

A-1500-24

"suggests . . . a trial court should not charge a jury with both (8) and (9)" because they are "two different theories of recovery."[4]

Walmart contends the trial record did not support the court instructing the jury with Model Jury Charges (Civil), 5.20F(9), which it notes uses similar "created" language to Model Jury Charges (Civil), 5.20F(10), because the record contained no evidence Walmart created the purported dangerous condition related to the allegedly defective mounting for the fire extinguisher at issue. Rather, it asserts the 5.20F(9) charge would only have been appropriate had plaintiff been injured solely due to the extinguisher's location.  It highlights no evidence was presented of another such incident occurring, despite the number of patrons passing through that area and its numerous safety inspections around the time of the incident.  Walmart reiterates plaintiff's owner-created danger theory fails for the same reasons.

Finally, Walmart maintains the trial court's erroneous jury charge was not harmless error because it went to the key issue being retried—notice—and may

---

[4]  The applicable note provides the charge applies to "cases where the defendant [was] not at fault for the creation of the hazard o[r] where the hazard [was] not to be reasonably anticipated as an incident of defendant's mode of operation." Model Jury Charges (Civil), 5.20F(8), note 1 (citing Maugeri v. Great Atl. & Pac. Tea Co., 357 F.2d 202 (3d Cir. 1966) (dictum)).  However, contrary to Walmart's contention, nothing in the note or cited case suggests Model Jury Charges (Civil), 5.20F(8) and 5.20F(9) cannot be given together.

22

have affected the trial's outcome. It asserts the court committed the same reversible error as in the first trial, which this court found "completely negate[d] the need for notice, even . . . coupled with 5.20F(8)." See Krassner, slip op. at 14-15. Walmart contends Prioleau is "almost directly on point," because there, as here, the jury could have come to a different conclusion had the court provided proper instruction to the jury.

Plaintiff, in turn, argues the trial court did not err in giving Model Jury Charges (Civil), 5.20F(9), because the trial record supported a finding Walmart created the hazardous condition that caused his injuries by placing the fire extinguisher so that it obstructed the aisle and securing it with a strap that could easily come undone. He highlights Walmart's corporate office was responsible for the fire extinguisher's placement, asserting Walmart's choice to place the extinguisher on the side of the beam that encroached into the "narrow" personal care aisle, rather than on a side of the column not facing any of the aisles, despite its knowledge customers regularly bump into things while shopping, made plaintiff's incident foreseeable.

Plaintiff further argues the trial court was not prohibited from instructing the jury with Model Jury Charges (Civil), 5.20F(9) based on this court's prior decision. He reasons the jury was not instructed with Model Jury Charges

23

(Civil), 5.20F(9) in the first trial and, thus, its applicability was not at issue there. Plaintiff asserts Model Jury Charges (Civil), 5.20F(9) addresses "a separate and distinct" theory of liability from Model Jury Charges (Civil), 5.20F(10), reasoning 5.20F(9) is "an alternative theory of liability" from the mode-of-operation charge under 5.20F(10) this court found to be inapplicable in the prior appeal because it dealt with self-service business operations. He cites Prioleau for the proposition Model Jury Charges (Civil), 5.20F(9) can be properly given when a mode-of-operation charge would be improper. Plaintiff also avers he was not precluded from requesting that jury charge "simply because" he did not request it at the first trial.

Plaintiff also asserts the trial court did not err in instructing the jury with both Model Jury Charges (Civil), 5.20F(8) and 5.20F(9) because, contrary to Walmart's contention, it was neither confusing nor misleading. He reasons the court's instruction did not compel the jury to disregard the requirement of notice or suggest notice did not need to be established at all. Rather, plaintiff contends the trial court "simply" instructed the jury it was not necessary to find Walmart had notice of an unsafe condition "if" it found the premises to be in an unsafe condition and that Walmart created the condition through its own acts or omissions. He further contends it was not improper to assert Walmart created

24

the unsafe condition of the fire extinguisher's placement that led to his injuries as "alternative grounds" to establishing Walmart's liability.

In <u>Washington v. Perez</u>, our Supreme Court articulated the standard of review for challenging jury instructions in civil cases. 219 N.J. 338 (2014). The court explained:

> Appellate review of a challenged jury instruction entails not only scrutiny of the charge itself, but an inquiry as to whether an erroneous charge may have affected the trial's result. Notably, "in construing a jury charge, a court must examine the charge as a whole, rather than focus on individual errors in isolation." <u>Viscik v. Fowler Equip. Co.</u>, 173 N.J. 1, 18 (2002). "As a general matter, [appellate courts] will not reverse if an erroneous jury instruction was 'incapable of producing an unjust result or prejudicing substantial rights.'" <u>Mandal v. Port Auth. of N.Y. & N.J.</u>, 430 N.J. Super. 287, 296 (App. Div. 2013) (quoting <u>Fisch v. Bellshot</u>, 135 N.J. 374, 392 (1994)). However, erroneous jury instructions "constitute[] reversible error where the jury outcome might have been different had the jury been instructed correctly." <u>Velazquez ex rel. Velazquez v. Portadin</u>, 163 N.J. 677, 688 (2000). Generally, "'erroneous instructions on material points are presumed to be reversible error.'" <u>McClelland v. Tucker</u>, 273 N.J. Super. 410, 417 (App. Div. 1994) (quoting <u>State v. Martin</u>, 119 N.J. 2, 15 (1990)).
>
> [<u>Id.</u> at 351 (citations reformatted).]

Review of jury instructions is a two-step process. First, we must determine whether an error actually occurred. "In civil matters, the trial court

should give an instruction that appropriately guides the jury on the legal basis of a plaintiff's claim or a defendant's affirmative defense, so long as there is a reasonable factual basis in the evidence to support that claim or defense." Walker v. Costco Wholesale Warehouse, 445 N.J. Super. 111, 120 (App. Div. 2016). "Jury charges 'must outline the function of the jury, set forth the issues, correctly state the applicable law in understandable language, and plainly spell out how the jury should apply the legal principles to the facts as it may find them . . . .'" Velazquez, 163 N.J. at 688 (quoting Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-92 (1966)). Second, we must determine whether that error "may have affected the trial's result." Walker, 445 N.J. Super. at 120 (quoting Washington, 219 N.J. at 351). Importantly, we have noted "an improper jury instruction is a poor candidate for application of the harmless error rule, [and] a charge which misleads a jury will require a reversal and a new trial." Vallejo by Morales v. Rahway Police Dep't, 292 N.J. Super. 333, 342 (App. Div. 1996) (internal citations omitted).

Model Jury Charges (Civil), 5.20F(9), "Notice Not Required When Condition is Caused by Defendant," provides:

> If you find that the land (or premises) was not in a reasonably safe condition and that the owner/occupier and/or an agent, servant[,] or employee of the owner/occupier created that condition through their

A-1500-24

own act or omission, then, in order for plaintiff to recover, it is not necessary for you also to find that the owner/occupier had actual or constructive notice of the particular unsafe condition.

[(Emphasis added).]

In the first appeal, we held the trial court charging the jury with Model Jury Charges (Civil), 5.20F(10) was reversible error "because it was, in substance, a mode-of-operation charge." Krassner, slip op. at 11. Explaining the mode-of-operation doctrine "ha[d] never been expanded beyond the self-service setting," we reasoned there was "no basis" for the trial court to instruct the jury with 5.20F(10) as there was "no suggestion plaintiff's contact with the fire extinguisher occurred in the context of a self-service operation." Id. at 14. Moreover, we concluded charging the jury with Model Jury Charges (Civil), 5.20F(8) did not negate the prejudice of issuing the 5.20F(10) charge "because 5.20F(10) completely negates the need for notice, even if it is coupled with 5.20F(8)." Id. at 14-15.

Accordingly, the trial court was prohibited from giving a mode-of-operation charge at the second trial based on our holding in the first appeal. However, plaintiff was not precluded from advancing a new theory of liability on retrial. We have held:

27

> Where a new trial has been granted "the case stands as if there had never been a trial; the court has the same power with reference to matters connected with the trial of the case as it had before the first trial was had, and it is the duty of the court to proceed as in the first instance. The new trial is had as if there had never been a previous one." New claims and defenses may be asserted in the subsequent trial.
>
> [Murphy v. Implicito, 392 N.J. Super. 245, 256 (App. Div. 2007) (emphasis added) (quoting Franklin Disc. Co. v. Ford, 27 N.J. 473, 492 (1958)).]

Thus, in the second trial, the parties were "not limited to the same proofs and theories of liability that [they] offered in the first trial." See id. at 257. This underscores the principle that a new trial effectively resets the litigation, allowing the parties to present new evidence, claims, and defenses as if the prior trial had not taken place.

We did not address the propriety of utilizing Model Jury Charges (Civil), 5.20F(9) in the first appeal because the issue was not raised there and, thus, only determined the court erred in using the mode-of-operation charge under Model Jury Charges (Civil), 5.20F(10). Although we remanded for the jury to decide the disputed fact of whether Walmart had constructive notice of the condition of the fire extinguisher, we did not foreclose either party from advancing additional arguments. In short, plaintiff was permitted to argue another jury charge should be given based on the facts presented at trial.

We conclude the trial court did not err in giving Model Jury Charges (Civil), 5.20F(9) substantially for the reasons set forth on the record by the trial court during the charge conference and add the following. Contrary to Walmart's arguments, Model Jury Charges (Civil), 5.20F(9) is not akin to a res ipsa loquitur charge because it does not require an inference of negligence. Moreover, it is not analogous to Model Jury Charges (Civil), 5.20F(10) because it does not involve Walmart's mode-of-operation or dispense with notice based on a hazardous condition created by its customers.

In Prioleau, our Supreme Court addressed the applicability of Model Jury Charges (Civil), 5.20F(9) as an alternative theory of liability to the 5.20F(10) mode-of-operation charge.[5] See 223 N.J. at 255-56. There, the plaintiff argued the jury was properly instructed under the 5.20F(9) charge as an alternative theory of liability obviating the need to prove notice "even if the trial court erroneously charged the jury to consider the mode-of-operation rule." Id. at 255. The Court noted the trial court "properly" charged the jury with 5.20F(9), given

---

[5] The Court refers to the mode-of-operation charge as Model Jury Charges (Civil), 5.20F(11) in its decision but notes it had been renumbered in 2014 as 5.20F(10), subsequent to the trial at issue there. Prioleau, 223 N.J. at 253 n.4. In the first appeal, we noted Model Jury Charges (Civil), 5.20F(10) was renamed in 2022, but the text of the charge remained the same. Krassner, slip op. at 13-14.

the plaintiff's contention the defendants' employees tracked oil and grease from a restaurant kitchen into a restroom supported a finding the defendants created a dangerous condition. Id. at 265 n.7, 266. However, it held the trial court "did not properly" give the 5.20F(10) mode-of-operation charge because no evidence in the trial record established the location of the plaintiff's accident bore "the slightest relationship to any self-service component of [the] defendants' business." Id. at 253 n.4, 264. Thus, given it was "undisputed that there was no evidence of actual or constructive notice," the Court remanded the matter for a new trial on the issue of liability as the erroneous mode-of-operation charge may have impacted the jury's verdict on the question of liability. Id. at 266-67.

The trial court here likewise properly found there was sufficient evidence presented at trial to support giving Model Jury Charges (Civil), 5.20F(9). Walmart's corporate office was responsible for the fire extinguisher's placement. Cuzzo testified the fire extinguisher's placement was chosen to keep Action Alley free from obstructions as it was a high-traffic area. None of Walmart's employees, however, could explain why the fire extinguisher was placed on the side of the column facing the personal care aisle rather than on one of its other sides where it would not have obstructed any aisles. Walmart placed the fire extinguisher there despite knowing customers walking through the store

"bump[ed]" into beams, aisles, and merchandise "on a fairly regular basis." Moreover, in the prior appeal, this court observed "a jury could conclude . . . a hazardous condition could be created if the fire extinguisher, encroaching as it does into the walkway, were placed in any aisle, particularly a narrower side aisle." Krassner, slip op. at 21 (emphasis added).

We are unconvinced by Walmart's argument the jury was "wrongly instructed that notice did not matter." It is undisputed the court gave the appropriate charge under Model Jury Charges (Civil), 5.20F(8). The court additionally gave the charge under Model Jury Charges (Civil), 5.20F(9). Importantly, the court did not advise the jury it did not have to find notice. The court only noted that "if" the jury found Walmart created the unsafe condition, then it was not necessary for it to find Walmart had either actual or constructive notice "of that particular unsafe condition." (Emphasis added). The only unsafe condition plaintiff suggested Walmart created was the placement of the fire extinguisher. Therefore, we determine plaintiff was permitted to advance separate theories of liability against Walmart, and there was ample evidence justifying the court's instructing the jury on Model Jury Charges (Civil), 5.20F(9).

To reiterate, the only evidence at trial Walmart created a dangerous condition involved the placement of the fire extinguisher. Model Jury Charges (Civil), 5.20F(9) was given regarding the placement of the fire extinguisher, not because of the purported "exceedingly easy" manner in which the harness could be dislodged from the column. Moreover, plaintiff's counsel did not argue in his summation Walmart created the dangerous condition regarding the fire extinguisher readily dislodging from the mounting. Rather, he argued Walmart had notice of the allegedly defective mounting of the fire extinguisher. We conclude the charge, when considered in the context of the proofs presented and arguments of the parties, did not mislead the jury and was not capable of producing an unjust result. Accordingly, we are unpersuaded there was any potential confusion for the jury.

To the extent we have not specifically addressed any remaining arguments Walmart raised, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1500-24